## YEDERLINIC v STATE OF FLORIDA
### Case No. 85-18AC (County Court Case No. 84-8860MM10)
Seventeenth Judicial Circuit, Broward County
April 2, 1987

## APPEARANCES OF COUNSEL

**Jon H. Gutmacher** for appellant.

**James P. McLane** for appellee.

## OPINION OF THE COURT

MARK A. SPEISER, Circuit Judge.

*FACTS.*

At the trial below, Appellant was convicted of Unlawful Blood Alcohol Level (UBAL) and acquitted of the Driving Under the Influence charge. The breathalyzer reading when converted into a blood level count registered .15. The Appellant who was stopped at approximately 2:30 A.M. submitted to the test on April 22, 1984 at 3:07. Appellant admitted to have three drinks between 12:30 A.M. and 1:30 A.M. The trooper administering the breathalyzer exam indicated the machine was in good working order both prior to and subsequent to his conduct of the test and conformed to the rules of the Department of Health and Rehabilitative Services.

The primary issue raised at trial was whether the breathalyzer readout was a true and accurate measurement of the alcohol level in the Appellant's blood. The Appellant argued that the State failed to establish by expert testimony a correlation factor between the breathalyzer reading and the blood alcohol level since the test may not necessarily be a true reflection of the actual blood alcohol count in the Appellant at the time of his arrest. The Appellant claims this burden was not met.

The additional assignment of error raised by the Appellant is that the trial judge improperly excluded from evidence the results of a chemical test conducted on October 19, 1984 during which the Defendant breathed into the same breathalyzer machine after having consumed a quantity of alcohol. The import of this purportedly simulated exam was to establish before the jury that the Defendant would have had to consume a greater quantity of liquor than he had on the evening in question to have a .15 blood alcohol reading on the breathalyzer machine.

*OPINION.*

Initially, this Court would observe that the Supreme Court in a strikingly similar case, *Stevens v. State*, 419 So.2d 1058 (Fla. 1982) held that a trial judge has the discretion as to whether to admit in evidence the results of a test or experiment. In an effort to establish

**133**

that a purported confession was given while intoxicated, the defendant in *Stevens* argued that he be allowed to consume two cases of beer to demonstrate to the court whether he could have voluntarily waived his constitutional rights.

Since *Stevens* held that such an experiment would not reach the level of an accepted scientific test, this Court perceives no distinguishable features in the instant case that would merit characterizing Judge Wright's ruling an abuse of discretion. Moreover, despite the lower court's ruling it is readily apparent from a review of the record below that Appellant was nevertheless able to present before the jury for its consideration the essential details of his experiment:

(1) Mario Yederlinic, the Appellant's father testified that on October 19, 1984, he was present at the Florida Highway Patrol after having given the Appellant 10 ounces of 80 proof vodka and that the Appellant was quite intoxicated. (R-171).

(2) Trooper Evers testified that on October 19, 1984, at an independent blood-breath test conducted on the same breathalyzer machine the Appellant had a .15 reading and that it would take a person of the Defendant's weight nine drinks to have a .15 reading (R 213-217).

The jury still convicted the Appellant for having an unlawful blood alcohol count. This Court therefore cannot accept this ground advanced by the Appellant as a basis to reverse his conviction.

The Appellant's second argument is that the State failed to rebut his contention that the breath reading was .05 higher because it was taken during the postabsorptive phase of intoxication. This assertion is premised on the claim (the validity of which this Court deems unnecessary to address) that the delayed administration of the breathalyzer test (i.e. during the postabsorptive phase) does not truly reflect the blood alcohol level at the time of his earlier arrest (i.e. the preabsorptive phase immediately following the alcohol consumption). This ingenious and novel claim is without legal precedent in this State and therefore must be rejected.

Appellant refers to *People v. Pritchard*, 209 Cal. Rep. 314 (1984) for the proposition that there is a legal distinction in the blood alcohol measurements during these two phases of intoxication. The California Vehicle Code, Section 23152(b) provides that there is a rebuttable presumption that if the blood alcohol level is .10 percent or more within three hours after arrest, then the blood alcohol level at the time of arrest is .10 percent or more. A review of the relevant Florida Statutes, namely Sections 316.193 - 316.1934 indicates that this state

134

lacks a provision analogous to Section 23152(b) of the California Vehicular Code. Thus the reasonable inference can be drawn from the relevant legislative scheme that in Florida in a UBAL prosecution the State does not have to establish that the breathalyzer test sought to be introduced into evidence reflects a blood level in the preabsorptive stage of intoxication so long as the statutory provisions and administrative rules enacted there under are complied with. *State v. Potter*, 438 So.2d 1085 (2d DCA 1983), *Drury v. Harding*, 443 So.2d 360 (1st DCA 1983) and *Campbell v. State*, 423 So.2d 488 (1st DCA 1982).

A defendant is not precluded from arguing to the jury as did the Appellant that the breath reading taken was not a true barometer of his blood alcohol level at the time of his driving. The State however does not have the obligation within the present statutory framework of proving beyond a reasonable doubt that *both* his preabsorptive and postabsorptive blood levels would exceed .10 percent or higher.

The decision of the trial court is therefore AFFIRMED.