THOMAS LLOYD FARRAR, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Respondent, No. 41900—235. S. W. (2d) 391.

Division Two, November 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled in Per Curiam Opinion Filed January 8, 1951.

*Everett Hullverson* and *D. Raymond Carter* for appellant; *F. Leland Jones* of counsel.

410

*E. G. Nahler, C. H. Skinker, Jr.,* and *W. W. Dalton* for respond-ent.

[392]   WESTHUES, C.—Appellant Farrar filed this suit to re-cover damages alleging that through the negligence of the defendant he contracted silicosis while he was employed as a sand blaster by the defendant at Springfield, Missouri.   A jury returned a verdict in plaintiff's favor in the sum of $45,000.   The trial court sustained defendant's motion for new trial assigning as a reason therefor error in an instruction given at plaintiff's request.   Plaintiff appealed.

The defendant in its answer pleaded the statute of limitations, that is, Title 45, Sec. 56, U. S. C. A., which provides "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." Plaintiff alleged that his duties were in connection with interstate commerce and, therefore, governed by the Federal Statutes. Urie v. Thompson, 352 Mo. 211, 176 S. W. (2d) 471, l. c. 475(11). The question of whether plaintiff's claim was barred at the time he filed his suit is presented for decision.

The evidence disclosed that plaintiff was in defendant's employ from 1922 until August, 1945. For the period from 1922 to 1932 his principal duties were sandblasting and painting railroad cars and other equipment. From 1932 to the time he quit work, plaintiff's major duty was painting. He also did a little sandblasting during this period.

For the purpose of this case we assume that plaintiff introduced substantial evidence justifying a finding that through the negligence of the defendant in not providing plaintiff with an adequate respirator he contracted silicosis.

Plaintiff testified that he quit work in August, 1945, because he was not feeling well; that he asked for a leave of absence because of illness but that the request was refused and on September 12, 1945, he received a letter informing him that his job had been terminated; that he had not worked for the defendant since that date and had been totally incapacitated since September, 1945. The present suit was filed on December 28, 1948.

Plaintiff testified that Dr. E. L. Simpson of Springfield treated him in 1946. Dr. Simpson's deposition was taken and introduced in evidence by the defendant. The doctor's testimony was that he treated plaintiff both before and after 1945; that in June, 1946, plaintiff was in the Springfield Baptist Hospital for a short time; that he was there again in September, 1946, and again in May, 1949. The diagnosis of plaintiff's illness in June, 1946, according to Dr. Simpson's evidence, was as follows:

"A. Mr. Farrar was admitted at the Springfield Baptist hospital on 6/28/46.

"Q. And what was the diagnosis at that time, Doctor?

"A. With chills, temperature, [393] cough, fever, expectoration of thick sputum for the past 2 or 3 days.

"Q. That is the notation that you read?

"A. Yes, sir.

"Q. I see.

"A. A physical examination showed patient to be acutely ill, skin dry, pulse regular, no murmurs in heart, right lung filled with moist rales, squeaking asthmatic rales in left lung,

breathing is labored; remainder of physical examination essentially negative. * * *."

The doctor testified that an X ray taken at that time showed the following:

"Q. And what does that report show, Doctor?

"A. Film of chest shows an increase in the hilus shadows and a small area of increased density in the 5th inner space on the left. Also an area of increased density in the 4th inner space on the right and 7th inner space on the right. These areas are evidence of a pneumonitis. There is also evidence of emphysema of the chest."

Dr. Simpson stated further that in his opinion plaintiff did not contract silicosis. Dr. Charles W. Miller of St. Louis, Missouri, testified that in his opinion plaintiff did not at the time of the trial have silicosis.

The above facts are stated to support plaintiff's contention that he did not know he had silicosis while he was being treated by Dr. Simpson. Appellant's theory as to the statute of limitations is stated in his brief as follows:

"Even if Farrar did leave his employment in 1945, because he suffered the symptoms and manifestations of silicosis, still his cause of action would not be barred because the disease was not sustained *and ascertainable* until 1948.

"The period of limitation did not begin to run until 1948 when Farrar first had notice and knowledge of the true nature of his disease."

Plaintiff was examined by Dr. A. C. Henske of St. Louis, Missouri, on October 28, 1948, and by Dr. A. M. Frank, also of St. Louis, on November 11, 1948. X rays were taken. Both Dr. Henske and Dr. Frank diagnosed plaintiff's illness as silicosis. It was their opinion that he contracted this sickness while sandblasting and painting for the defendant.

The defendant concedes that no doctor diagnosed plaintiff's illness as silicosis until October, 1948.

The question is—when did the statute of limitations begin to run against plaintiff's claim? Was it when he discovered he had silicosis? Or when he quit work? An examination of the authorities convinces us that it was on the date he quit work, that is, August, 1945.

The alleged negligence of the defendant constituted a continuing tort, Urie v. Thompson, 176 S. W. (2d) 1. c. 476(13). The statute of limitations does not begin to run against a claim based on a continuing tort until the disease is discovered, unless the unsafe conditions are removed or the claimant quits work. In such a case the statute begins to run on the last day the claimant worked under

the unsafe conditions. In the case before us the limitation period began when Farrar quit work even though he did not know he had silicosis. The rule is stated in 54 C. J. S. 141, 142, Sec. 174:

> "Master and Servant. In application of the general rules the courts have held that an employee's right of action against his employer for personal injuries accrues and limitations run from the date of the wrong or injury, or from the last day the employee was subjected to the conditions causing injury, as from the date on which the employment was terminated or the injury culminated. Limitations start to run despite the employee's ignorance that he has contracted an occupational disease or his ignorance of the true nature and extent of his injuries."

Plaintiff cited the case of Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018 (same case as 352 Mo. 211, 176 S. W. (2d) 471, and 357 Mo. 738, 210 S. W. (2d) 98). Urie claimed he contracted silicosis while employed by the defendant as a locomotive fireman. He was incapacitated by reason of illness in May, 1940, and filed suit on November 25, 1941. This court held (176 S. W. (2d) l. c. 475-477 (11) (12) (13), that the alleged tort continued so long as Urie was required to work under the alleged unsafe conditions [394] and, therefore, the statute of limitations did not bar a recovery for all the injuries suffered by reason of the negligence of the defendant. The real question in the Urie case was whether Urie was confined in his recovery to the injury inflicted during the three years preceding the filing of the suit. He filed his suit 18 months after he was unable to continue his work. The United States Supreme Court approved the holding by this court on the question of limitations. See 69 S. Ct. l. c. 1025 (2,3), where the court said, "Accordingly we agree with the view expressed by the Missouri Supreme Court on the first appeal of this case, that Urie's claim, if otherwise maintainable, is not barred by the statute of limitations." The only language used 'by the United States Supreme Court in the Urie case which can give any comfort to the plaintiff is as follows, 69 S. Ct. l. c. 1024, 1025 (1):

> "Nor can we accept the theory that each intake of dusty breath is a fresh 'cause of action.' In the present case, for example, application of such a rule would, arguably, limit petitioner's damages to that aggravation of his progressive injury traceable to the last eighteen months of his employment. *Moreover petitioner would have been wholly barred from suit had he left the railroad, or merely been transferred to work involving no exposure to silica dust, more than three years before discovering the disease with which he was afflicted.*" (Emphasis ours.)

If that language emphasized means that the statute of limitations does *not* begin until the disease is actually discovered, even though it may be more than three years after the alleged injured party has been exposed to danger or has quit work, we must treat the statement as obiter dictum. That question was not in the case. Furthermore, as we shall see, may cases, including Federal cases, will be found holding to the contrary.

In Michalek v. United States Gypsum Co., C. C. A. 2nd., 76 F. (2d) 115, this very question was before the court. A miner sued alleging he had contracted silicosis. The court held the statute began to run when employment terminated *and not when the disease was discovered*. The court, 76 F. (2d) l. c. 116(1), said: "The negligence claimed in the first cause of action occurred during his service. The statute began to run when he left, and he had three years thereafter to sue. After this lapse, the action was barred. * * * But under no rule of common law has it been held that the opinion of an expert as to when silicosis actually appeared starts the statute running. The cause of injury and the wrong may be committed, perhaps, at different times, but must occur within the time of employment."

In Minyard v. Woodward Iron Co., 81 F. Supp. 414, l. c. 417(4), plaintiff's injury was silicosis. He quit work September 13, 1946. The court held the limitation statute began to run from the last day on which plaintiff inhaled silica dust which was September 13, 1946.

In Rowe v. Gatke Corporation, C. C. A. 7th., 126 F. (2d) 61, l. c. 66(8)(9), plaintiff's injury was asbestosis. The court held the statute of limitations began when work by employee ceased. The same rule was stated in Hercules Powder Co. v. Bannister, U. S. C. A. 6th., 171 F. (2d) 262.

Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130, l. c. 133, 134(8, 9), was an occupational disease case. The court held the limitation period began from the last tortious act.

In Tennessee Eastman Corporation v. Newman, (Tenn.) 121 S. W. (2d) 130, l. c. 134, 135(8-11), the court said: "In this case we have a continuous act, or omission in violation of law, from which a continuous additional inquiry (injury) is inflicted with a cumulative result. In fact, it is one continuous tort, beginning with the employment and ending only at the time of total disability of the employee and the termination of his employment."

Plaintiff cited the Urie case, supra, and also Schrabauer v. Schneider Engraving Product Co., 224 Mo. App. 304, 25 S. W. (2d) 529; Allison v. Missouri Power & Light Co., Mo. App., 59 S. W. (2d) 771. The holding in the Schrabauer case concerning the statute of limitations was overruled in a number of subsequent cases. See

Armstrong **[395]** v. Union Electric Light & Power Co., Mo. App., 60 S. W. (2d) 1013, l. c. 1014(1). In the Allison case, the plaintiff filed suit six years after the accident causing his injuries. He claimed that the full extent of his injuries was not determined until three years after the accident. The St. Louis Court of Appeals held the action was barred by the five year statute of limitations. The case as we read it is authority against plaintiff's contention.

If the rule contended for by the plaintiff were adopted, it would in effect repeal the statute of limitations in cases of this nature by judicial interpretation. Cases would, indeed, be rare where the statute would be applicable. Actions could be brought any number of years after termination of employment simply by claiming that the occupational disease was not discovered sooner. The law making body has deemed three years to be a sufficient length of time for discovery of such an illness. We cannot by judicial interpretation extend that time.

We rule, therefore, that plaintiff's cause of action at the time suit was filed was barred by the Federal Statute of Limitations, Title 45, Sec. 56, U. S. C. A.

The trial court should have directed a verdict for the defendant. The order of the trial court granting a new trial is, therefore, set aside and the cause remanded to the trial court with directions to sustain the defendant's motion for a directed verdict and to enter judgment for the defendant.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

ON MOTION FOR REHEARING, OR IN THE ALTERNATIVE FOR TRANSFER
TO THE COURT EN BANC

PER CURIAM:—Plaintiff, appellant on this appeal, filed a motion for rehearing, or in the alternative for transfer to the court en banc, and a brief in support thereof wherein the same questions presented in the original briefs are reargued. However, in addition thereto, it is charged that in the opinion we inadvertently misstated the evidence.

Plaintiff says he did not discover he had silicosis until 1948. In the motion plaintiff says, "There is no evidence that plaintiff 'had been totally incapacitated since September, 1945.' " The record shows that while plaintiff was on the witness stand he was asked and he answered the following questions:

"Q. Now, you became incapacitated, as I understand your testimony, in September 1945?

"A. Yes, sir.

"Q. And you have been incapacitated ever since?

"A. That's right."

In the reply brief filed by plaintiff's counsel when the case was submitted to this court, we find the following statement in the argument on the question of plaintiff's damages: "Since 1945, and until he dies, Farrar's inability to work costs him in lost salary from $175 to over $200 per month, and he can't even tend his garden at home to raise vegetables for himself."

It is needless to add that in the opinion we did not misstate the evidence inadvertently or otherwise. The charge that we misstated the evidence did not prompt us to file this memorandum. Plaintiff in the motion seems to be under the impression that we ruled that the statute of limitations began to run in September, 1945, because at that time plaintiff had silicosis. So that there may not be any misunderstanding on the question we intended to say, and we think we did so state, that the statute of limitations began to run when plaintiff quit work. The defendant could not have been guilty of any tortious act affecting plaintiff in his capacity as an employee after he quit work. The authorities reviewed in the opinion support that rule.

The motion for rehearing, or in the alternative to transfer to the court en banc, is overruled.